## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LUKE FRAZZA, ET AL.** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 06-1410 (CKK)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Luke Frazza slipped and fell at the White House on January 23, 2005. At the time, he was a leading photographer for the Agence France-Presse ("AFP"). He suffered serious and permanent injuries to his back. Mr. Frazza has since undergone two back surgeries and is unable to function as a photographer.

Conditions that day were snowy and icy. Despite these dangerous conditions, the defendant failed to take any precautions—such as warning signs or floor coverings. Mr. Frazza testified unequivocally that there was no mat in place at the time he fell. White House custodians testified that it was the usual practice to have mats in place on snowy days, but were unable to confirm whether there in fact was a mat in place at the time Mr. Frazza fell.

Plaintiffs have presented a detailed report of Dr. Randall Atlas, a well regarded expert in human factors, ergonomics, and architectural safety issues. Dr. Atlas visited the accident site, tested the floor, and authored a detailed report articulating his opinions. He stated, among things, the following:

> It is my opinion, as an expert in slips, trips and fall accidents, that this accident was foreseeable and preventable. Had the White House maintenance staff placed mats at the foyer entrance, Mr. Frazza would not have slipped on the vinyl flooring. In addition, there should have been the typical cones warning individuals to watch where they are walking. Slippery surfaces proper notice should have been given with respect to the changing floor conditions, from asphalt to concrete (which are not slippery, even when wet), to vinyl tile which by normal design specifications becomes slippery, even when wet … These corrective and preventable measures are inexpensive, easy to use, and easy to remove when not needed. Had these measures been used, it is my opinion within a reasonable degree of architectural probability that the accident would not have occurred.

*See* Report of Dr. Atlas, attached hereto as Exhibit 1, at 2.

Dr. Atlas also tested the slipperiness of the floor. He stated that "[m]y testing confirmed that the floor, in icy conditions, had a coefficient of friction of 0.34. This falls below the COF required by ASTM to maintain a non-slippery environment." *Id.*

Dr. Atlas' opinions support plaintiffs' negligence claim. Nevertheless, defendant has filed a baseless motion for summary judgment, which mischaracterizes and omits key facts developed during discovery. To begin with, defendant states in its motion that the testing performed by Dr. Atlas failed to establish a breach in the standard of care required by defendant. To the contrary,

Dr. Atlas' report and deposition discuss the specific reasons why defendant breached the applicable standard of care. Defendant is free to challenge Dr. Atlas' opinions, but summary disposition of such obvious factual disputes is inappropriate. Accordingly, for the reasons discussed herein, defendant's motion should be denied.

## RELEVANT FACTS

Plaintiff, Luke Frazza, is a photographer for AFP and was assigned to cover the White House at the time of the incident. *See* Complaint, attached hereto as Exhibit 2, at ¶3; Deposition of Luke Frazza, attached hereto as Exhibit 3, at 7-8. In January, 2005, his responsibilities included obtaining images of the President of the United States and he had access to portions of the White House complex for that purpose. *See* Exhibit 3 (Frazza Dep.) at 7-8. On the morning of January 23, 2005, Mr. Frazza was carrying out his duties as a photographer at the White House. There was a heavy storm that day. *Id.* at 16-19. Mr. Frazza was positioned at the North Portico driveway when he was instructed by a White House Press Office staff member to travel to the south lawn to photograph President George W. Bush's departure by helicopter to Camp David. *Id*. at 45-46. On the way, Mr. Frazza opened the door to the stair landing at the back of the lunchroom to drop off some equipment. *Id*. at 49. After taking a step, Mr. Frazza slipped on the wet and slippery tile floor. *Id*. Mr. Frazza sustained serious and permanent injuries to his back and spinal cord, including, but not limited to, herniating the L3-L4 disc in his spine, causing fragments of bone to become

lodged against the nerve, causing constant pain and inhibiting him in every aspect of life.  *See* Exhibit 2 (Complaint) at ¶5; Exhibit 3 (Frazza Dep.) at 72-76.

## GOVERNING LEGAL STANDARD

Summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits [or declarations], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006); *MDB Communications, Inc. v. Hartford Cas. Ins. Co.*, 479 F.Supp.2d 136, 140-141 (D.D.C. 2007). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb* at 895 (quoting *Anderson* at 248).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson* at 248; *Holcomb* at 895.

The legal standard for summary judgment gives great deference to the claims of the non-moving party.  The requirement is merely that the non-moving party "provide evidence that would permit a reasonable jury to find" in its favor. *Lanningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). Furthermore, when considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson* at 255; *see also Washington Post Co. v. United States Dep't*

*of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989); *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 849-50 (D.C. Cir. 2006); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc ). In order to make these inferences responsibly, the Court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).  It is impossible for the Court to do in light of the current evidentiary record.

## SUMMARY STATEMENT OF DISPUTED FACTS

There are several genuine disputes of material facts rendering summary disposition inappropriate:

1.  The coefficient of friction ("COF") when Dr. Atlas tested the floor in icy conditions was .34, below the requirement for a safe floor of .50 set forth by ASTM.  Defendant contends that Dr. Atlas improperly calculated the COF.  *See* memorandum in support of motion, attached hereto as Exhibit 4, at 7.  This remains a genuine dispute of a material fact.

2.  Mr. Frazza testified that there were no mats on the floor that day. *See* Exhibit 3 (Frazza Dep.) at 49.  Defense witnesses could not say whether mats were down that day, but contend it was the common practice to have such mats.  *See* Deposition of Dorothy Rose, attached hereto as Exhibit 5, at 18; Deposition of Dorie Taylor, attached hereto as Exhibit 6, at 65.  Whether in fact there was a mat down that day remains a genuine dispute of a material fact.

3.  Dr. Atlas opines that if a mat was in place that day, Mr. Frazza would not have fallen.  *See* Exhibit 1 (Atlas Report) at 2.  Defendant disputes this conclusion and, presumably, will provide contradictory evidence through its own expert.  This remains a genuine dispute of a material fact.

4.  Dr. Atlas opined that it is customary in the industry to have warnings and mats in place in such conditions.  *See* Exhibit 1 (Atlas Report) at 2; Deposition of Dr. Atlas, attached hereto as Exhibit 7, at 81.  Defendant presumably will dispute this fact.

**ARGUMENT**

This is a rather straightforward negligence action. As such, the facts surrounding the accident are contested.  Plaintiffs contend that there was no mat on the floor at the time Mr. Frazza fell.  *See* Exhibit 3 (Frazza Dep.) at 49; Exhibit 7 (Atlas Dep.) at 110.  Defendants dispute this fact, albeit inconclusively.  *See* Defendant's Answer, attached hereto as Exhibit 8, at ¶8; Exhibit 5 (Rose Dep.) at 18-29; Exhibit 6 (Taylor Dep.) at 54-55.

The report and testimony of Dr. Atlas sufficiently sets forth a breach in the applicable standard of care:

> Industry standards are that a COF below 0.49 is considered slippery and referenced as the standard of care in the Americans with Disabilities Act Accessibility Guidelines since 1990.  It is also well known in the maintenance and flooring industry that vinyl tile can be slippery when wet, especially with snow and ice that can be carried in on peoples' shoes.  My testing confirmed that the floor, in icy conditions, had a coefficient of friction of 0.34.  This falls below the COF required by ASTM to maintain a non-slippery environment…It

is my opinion as an expert in slips, trips, and fall accidents, that this accident was foreseeable and preventable.

*See* Exhibit 1 (Atlas Report) at 2. Nonetheless, defendant twists Dr. Atlas' statements, omits other portions of it, and challenges his conclusions regarding his testing of the floor in icy conditions.  These efforts do not change the fact that Dr. Atlas' opinion is that the floor in icy conditions had a COF of .34, well below the industry standard.  *See* Exhibit 1 (Atlas Report) at 2.

Dr. Atlas has obtained a Doctorate and a Masters degree for which he was trained in human factors and ergonomics; has been qualified numerous times to testify as an expert in similar cases; has written several articles on slips, trips, and falls; and performed numerous site inspections and evaluations of architectural factors and/or defects that have resulted in slip and falls.  He also enjoys membership in fifteen professional societies including the American Society of Safety Engineers and Human Factors & Ergonomics Society.  *See* Dr. Atlas' Curriculum Vitae, attached hereto as Exhibit 9; Exhibit 7 (Atlas Dep.) at 112-114.

Dr. Atlas concluded that **"**[i]t is customary and standard practice to have mats and warning cones at entrances to buildings that experience winter conditions…especially in Washington, DC…had the White House maintenance staff placed mats at the foyer entrance, Mr. Frazza would not have slipped on the vinyl flooring.  In addition, there should have been the typical cones warning individuals to watch where they are walking…These corrective and preventative

measures are inexpensive, easy to use, and easy to remove when not needed." *See* Exhibit 1 (Atlas Report) at 2.

Dr. Atlas' opinion references a clear "standard of care by which the defendant's actions can be measured" and indicates how that standard was breached on the day of Mr. Frazza's fall. *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997). He further testified as to what could have been done to prevent this accident. Despite the defendant's disagreement with these opinions, "where an expert in the field has testified that specific precautionary measures would have reduced or eliminated the risk to the plaintiff, and where the defendant has failed to present any explanation of its failure to utilize these measures, some inference of negligence might rationally be drawn." *Levy v. Schnabel Foundation Co.*, 584 A.2d 1251, 1255. (D.C. 1991).

Defendant's motion is dismissive of Dr. Atlas' finding that it is "customary and standard practice" to place mats and warning cones at entrances to buildings in the Northeast. *See* Exhibit 4 (Def. Motion) at 10. In an erroneous attempt to show Dr. Atlas cannot meet this standard, defendant selectively quotes Dr. Atlas. In fact Dr. Atlas expressly stated that "…it's standard practice when you have wet conditions… to put down mats and do the cones," and that his observations of other buildings "just reaffirmed the fact that it's standard practice…" *See* Exhibit 7 (Atlas Dep.) at 75. Moreover, later in the deposition, an exchange occurs where Dr. Atlas expressly grounds his opinion in published material, including GSA guidelines produced in this case for maintaining properties such as the White

House.  *See* Facilities Standards for the Public Building Service, attached hereto as

Exhibit 10, at 95.

> A.    …I flagged that in case we had to reference chapter and verse.
> Q.    So the two places that you've placed green flags, the first is in the GSA Custodial Management Desk Guide--
> A.    Yes.
> Q.    --on page 39, correct?
> A.    Yes, ma'am.
> Q.    And then the second one is in Facility Standards for the Public Building Service, March 2005 from GSA?
> A.    Yes, ma'am.
> Q.    And there you've got a flag on page 95?
> A.    Yes, ma'am. And you can see where I highlighted, it addresses how when you have wet and ice conditions that they should be putting mats down?

*See* Exhibit 7 (Atlas Dep.) at 81-82.

Moreover, Dorothy Rose and Dorie Taylor, the two White House

maintenance employees working the day of the incident (employees of the White

House for nearly twenty years each) testified that the use of mats and cones in wet

or icy conditions was standard practice at the White House.  Ms. Rose stated the

following:

> A.    We know what to do if it's raining or snowing.  We check the area. We put wet floor signs up, put the mats down, and make sure the area is safe, you know for people to walk by-walk through.
>
> Q.    Okay, now who determines when you put the mat down?
> A.    The weather determines. If it's raining, the mat will go down.
>
> Q.    Because whoever is working, if it's raining or snowing, should put the mat down?
> A.    Yes, the mat should be put down, yes.

A.   When it's raining, you put the mat down so the floor will be kept dry.

*See* Exhibit 5 (Rose Dep.) at 19-29.  Ms. Taylor then referenced that standard to the particular entrance of the incident; discussing the practice of placing a mat at this entrance in her deposition:

Q.   So why do you put it there?
A.   Because it's an entrance where if the weather is bad—and they have—all the entrance over there, they have carpet.

Q.   So if there wasn't carpet in that entrance way, that would be unusual?
A.   I think it would be unusual.  It's no way in the world that carpet shouldn't have been there.  The carpet should have been there.

*See* Exhibit 6 (Taylor Dep.) at 54-55.

In considering together Dr. Atlas' opinions regarding "customary standards and practice" in the industry, his hands-on testing of the floor, and extensive opinions grounded in industry standards and guidelines provided by the defense, Dr. Atlas went far beyond the requirement of testifying about "specific standards and…relat[ing] them directly to defendant's conduct."  *Phillips,* 714 A.2d at 773. Accordingly, defendant's argument for summary judgment has no merit.

## CONCLUSION

Plaintiffs have adequately supported their claim of negligence.  As set forth above, such claim is supported by Mr. Frazza, Dr. Atlas, and defense witnesses. And in any event, there are several genuine disputes of material facts rendering

summary disposition inappropriate. Accordingly, defendant's motion should be denied.

A proposed Order is attached hereto.

Respectfully submitted,

*/s/Ari S. Casper*
Patrick A. Malone (Bar #397142)
Ari S. Casper (Bar#471013)
STEIN, MITCHELL & MEZINES
1100 Connecticut Avenue, NW
Suite 1100
Washington, DC 20036
(202) 737-7777
Attorneys for Plaintiffs