# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LUKE FRAZZA and MARY FRAZZA,  ) | |
| ) | |
| Plaintiffs,    ) | |
| ) | |
| v.        ) | Civil Action No: 06-1410 (CKK) |
| ) | |
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Defendant.    ) | |
| ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

This slip-and-fall action fails for proof of one of the essential elements of plaintiffs' negligence claims: breach of an applicable and defined standard of care. ***Plaintiffs' own expert*** concedes that his test of the coefficient of friction for tile floor on which Mr. Frazza slipped at the White House on January 23, 2005 tested above the American Society of Testing Materials standard for safety when the floor was both dry and wet. Because plaintiffs offer no other proper evidentiary support for any other standard of care, and because the testimony of plaintiffs' own expert demonstrates that no reasonable fact-finder could find a breach of a relevant standard of care, the United States cannot be found liable for negligence. Accordingly, judgment should be entered in favor of defendant.

## I.     LEGAL STANDARDS

### A.     Summary Judgment

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tao v. Freeh, 27 F.3d 635,

should be considered safe and within the standard of care.  Id.; see Exhibit 1 [Atlas Report] at 1-2; Exhibit 2 [Atlas Dep.] at 39, 50.

In his Report, Dr. Atlas also indicated that he determined that the floor when wet had a coefficient of 0.32 which would fall below the standard for floor safety established by the ASTM.  See Exhibit 1 [Atlas Report] at 2.  Critically, however, Dr. Atlas testified very differently in his deposition about the coefficient of friction of the tile Mr. Frazza slipped on when it became wet.  In his deposition, Mr. Atlas reiterated that the applicable standard of care was that of the ASTM No. 649 and that flooring with a coefficient of friction at or over 0.5 was considered within the standard of care.  See Exhibit 2 [Atlas Dep.] at 48-49.  But after he was confronted with his own data and was asked more specifically about the results of his tests when the floor was wet but not icy, Dr. Atlas admitted that he averaged the data he obtained for wet and icy conditions.  Critically, Dr. Atlas acknowledged that the coefficient of friction for the floor when wet was higher than when dry and well within the standard of care set by the ASTM:

> Q.    For the dry test you conducted you found a coefficient of friction of point 57 so that would be safe, correct?
>
> A.    Yes, ma'am.
>
> Q.    Now, you only gave one wet coefficient of friction that's for 0.32.  And you have three sets of data, so which points did you use to come up with the point 32?
>
> A.    . . . It was using the ice data not just the water.
>
> Q.    So point 32 includes --

Exhibit 2 [Atlas Dep.] at 55.  Thus, the expert evidence proffered by plaintiffs relating to the standard of care as defined by the coefficient of friction test in ASTM No. 649 proves that there was no breach of the standard of care.

The only evidence Dr. Atlas offered beyond the coefficient of friction test is his supposed "experience" that there is the supposedly "customary and standard practice" of placing mats and warning cones at the entrances of buildings in the northeast.  Exhibit 1 [Atlas Report], at 2.  This amounts to little more than his general, lay opinion that the floor might have been safer if a mat had been placed in the doorway where Mr. Frazza slipped.  This aspect of Dr. Atlas's opinion is not based on a sufficiently established or recognized standard of care because an expert must proffer "a specific, articulable (and articulated) standard of care." Carmichael, 577 A.2d at 315; see Phillips v. District of Columbia, 714 A.2d 768, 773 (D.C.1998) ("[T]he expert must testify as to specific ... standards and must relate them directly to the defendant's conduct." (internal citation omitted)).[3]  Here, Dr. Atlas testified merely that he believed this standard applied in the Northeast, and that this aspect of his Report was primarily based, not on a published standard, but on his observation of unidentified buildings with unknown flooring surfaces while walking between the hotel where he stayed and plaintiffs' counsel's office on a rainy day in October.  See Exhibit 2 [Atlas Dep.] at 73-75 (". . . it's standard practice in the northeast that when you have wet conditions. . . it is standard practice to put down mats and do the cones").

---

[3] See also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (describing the trial court's "gate keeping function" under Fed. R. Evid. 702 with regard to the admissibility of expert opinions); Burkhart v. Washington Metro. Area Transit Auth., 112 F.3d 1207, 1211 (D.C. Cir. 1997).