UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LUKE FRAZZA and MARY FRAZZA, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No: 06-1410 (CKK) |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs cannot prevail in this tort case without proper and supportive expert testimony, and they simply do not have it. Defendant's motion demonstrated that the only appropriate expert opinion offered by Plaintiffs' expert affirmatively demonstrates Defendant's compliance with the standard of care. Otherwise, Plaintiffs' expert fails to identify any other national standard of care by which Defendant's conduct could be measured or found lacking. That is true whether the floor was wet or dry. As a result, Plaintiffs' prevailing notion that a mat should have been put at the site is illogical and contrary to the evidence because -- according to Plaintiffs' own expert -- the floor was less slippery when wet. Because "[t]he value of the opinion of an expert witness is dependent on, and is no stronger than, the facts on which it is predicated[,]" Williams v. Watson Bros. Transp. Co., 16 N.W.2d 199, 202 (Neb. 1945), Defendant's motion should be granted.

Moreover, although Plaintiffs' expert opines generally that Mr. Frazza might not have slipped if a mat had been put down, that vague opinion is insufficient as a matter of law because it is not grounded in any recognized or acknowledged national standard. Indeed, this sort of

opinion about whether a mat would have helped prevent the incident is inadmissible because it amounts to nothing more than the "woulda-coulda-shoulda" testimony that should be rejected from experts. See Briggs v. Washington Metropolitan Area Transit Auth., 481 F.3d 839, 845-46 (D.C. Cir. 2007); Clark v. District of Columbia, 708 A.2d 632, 635 (D.C. 1997). Neither Plaintiffs' expert's belief that some commercial office buildings with various types of floor coverings typically place mats and warning cones at their public entranceways during inclement weather nor a deviation from the White House's practice of placing mats is sufficient to establish a standard of care or its breach. Even if there were a national standard requiring the placement of mats at public entranceways, it would not apply in this case because the location where Mr. Frazza slipped is not used by the public, and Plaintiffs' expert readily acknowledged that he did "not necessarily" know what the standard of care for placing mats and cones might be for an employee entrance. See Atlas Dep. at 79.

    Plaintiffs' opposition to defendant's straightforward motion for summary judgment consists mainly of misdirection and obfuscation. Importantly, because the coefficient of friction of the floor where Plaintiff Luke Frazza slipped was well within the particular American Society of Testing Materials' safety standard Plaintiffs' expert identified, and there is no national standard requiring placement of a mat or warning people that a floor might be wet, defendant's motion should be granted.

**Argument**

A.   **There Are No Genuine Disputes of Material Fact**

As the outset, although Plaintiffs' opposition attempts to identify four disputed facts which they assert entitle them to survive Defendant's motion for summary judgment, there are no material disputes of fact.  See Pls.' Opp. at 5-6.  Indeed, the facts Plaintiffs include in their opposition differ from the facts identified in Defendant's motion.  As such, Plaintiffs' Summary Statement of Disputed Facts fails to comply with Local Rule 7(h), which requires that an opposition to a summary judgment motion be accompanied by "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  The opposing statement of genuine issues must respond directly to the factual statements asserted in the motion for summary judgment.  As stated in the rule:

> In determining a motion for summary judgment, the court may assume that *facts identified by the moving party* in its statement of material facts are admitted, unless *such a fact* is controverted in the statement of genuine issues filed in opposition to the motion.

Local Civil Rule 7(h) (emphases added).  See also LCvR 56.1.

Plaintiffs' Summary Statement of Disputed Facts does not purport to controvert a single one of the ten facts stated in Defendant's Statement of Material Facts Not In Genuine Dispute. Instead, Plaintiffs' Statement identifies four *other facts* they claim have been established by other parts of the record.  Having failed to controvert Defendant's facts, Plaintiffs must be deemed to have conceded those facts, as permitted by the Local Rule.  See Twist v. Meese, 854 F.2d 1421 (D.C. Cir. 1988); Jackson, Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 151 (D.C. Cir. 1996); Heasley v. D.C. General Hosp., 180 F. Supp. 2d 158, 163 (D.D.C. 2002); Trawick v. Hantman, 151 F. Supp. 2d 54, 58-59 (D.D.C. 2001).

Moreover, Plaintiffs' four factual statements fail to demonstrate any reason why Defendant's motion should be denied because either Plaintiffs' statements are immaterial to the narrow issue presented by Defendant's motion or because they are unsupported by the record.

1.      Contrary to Plaintiffs' statement, Defendant does not contend that Dr. Atlas improperly calculated the coefficient of friction.  Instead, Defendant's motion demonstrates only that Dr. Atlas improperly misrepresented the relevant coefficient of friction for the wet floor in his written report by combining the data for the wet floor with the icy.  Defendant's motion is predicated on the fact that Dr. Atlas found that the coefficient of friction of both the dry and wet floor fall above the standard of 0.5 in the American Society of Testing Materials Technical Publication No. 649 ("ASTM No. 649").  Although Plaintiffs attempt to manufacture a dispute of fact out of the fact that Dr. Atlas also found that the coefficient of floor under icy conditions was 0.34, this data is immaterial because there is absolutely no evidence in the record that the floor was icy where Mr. Frazza says he slipped.  Mr. Frazza's own testimony is limited to the fact the floor was, at most, wet.  See Def.'s Mem. at 4, 9.  Indeed, Mr. Frazza's testimony on even that fact is limited because he appears to be attempting to supply an explanation for his own clumsiness.  See id. at 4.  There is no dispute of fact concerning Dr. Atlas's determination of the coefficient of friction, but the relevant numbers are 0.57 for the dry floor and 0.85 for the wet floor.  The fact that the coefficient of friction is *higher* when the floor is wet is significant because it obviates Plaintiffs' alternative theory that the standard of care required something else to be done (*e.g.,* placing a mat) when the floor could be reasonably be expected to become wet.

2.      Whether there were mats in place when Mr. Frazza claims to have slipped on January 23, 2005 is in dispute in the evidence, but that is not a material fact for purposes of

Defendant's motion because in forming his opinion, Dr. Atlas accepted that no mat was present. Accordingly, Defendant's motion assumes the facts in the light most favorable to Plaintiffs. Plaintiffs cannot manufacture a dispute of fact by insisting that the evidence be viewed in any other fashion.  But even if they could, the assumption that a mat was present would show compliance with the only other standard of care Plaintiffs' expert has offered, and thus Plaintiffs would be unable to establish a breach such that Defendant's motion would still be appropriately granted.  In short, Defendant prevails in this case whether a mat was present or not, so there is no genuine dispute of a material fact concerning the presence or absence of one.

3.      This paragraph purports to establish a breach of the standard of care described in Plaintiffs' paragraph 4.  Dr. Atlas's opinion that a mat might have prevented Mr. Frazza's fall is not sufficiently grounded in a published or acknowledged standard of care to be admissible as a national standard.  Even Dr. Atlas presented his reference to the placement of a mat [and warning cones] as a regional custom or practice, rather than a true standard of care, which he had observed only in the Northeast.  See infra.  As a result, the Court should not credit Plaintiffs' Disputed Fact No. 3 at all.

4.      Plaintiffs' fourth statement concedes that rather than a national standard of care, Dr. Atlas merely testified about a custom of "warnings and mats"in an unspecified industry. Because this unspecified industry custom does not "relate the standard of care to the practices in fact generally followed by other comparable ... facilities or to some standard nationally recognized by such units," it is not an admissible expert opinion. Whether an industry custom exists is not a material fact because Plaintiffs must point to expert opinions to support their claims.  Varner v. District of Columbia, 891 A.2d 260, 267 (D.C. 2006).

**B.      Plaintiffs' Expert Fails to Offer An Admissible Opinion On Which Liability Could Be Found**

Notably, Plaintiffs' opposition fails to address any of the cases cited in Defendant's motion. By failing to challenge it, Plaintiffs concede the absolute necessity of expert testimony in slip-and-fall cases that "relate[s] the standard of care to the practices in fact generally followed by other comparable . . . facilities or to some standard nationally recognized by such units." See Def.'s Mem. at 5-6, quoting Clark v. District of Columbia, 708 A.2d 632, 635 (D.C.1997) (internal quotation marks and citations omitted). Plaintiffs' expert must do this within the context of his own opinion, as clarified in his deposition, and the Court should disregard argument based on facts the expert did not identify as those on which he relied in his opinion. See Fed. R. Evid. 702, 703.

Plaintiffs cite just two cases in support of the argument for sufficiency of their expert's opinion that cones and a mat should have been placed in unspecified locations.[1] Those two cases are Levy v. Schnabel Foundation Co., 584 A.2d 1251 (D.C. 1991), and Phillips v. District of Columbia, 714 A.2d 768 (D.C. 1998). Neither case involved negligence in an alleged slip-and-fall, and Levy provides little support because the D.C. Court of Appeals called the expert testimony "barely sufficient" and "rather unorthodox." Levy, 584 A.2d at 1255, 1252. In any event, these cases are easily distinguished.

Levy involves damage to property adjacent to a construction site. Levy, 584 A.2d at 1252. The expert for plaintiff, who was a structural engineer, testified that use of "bracket piles"

---

[1] Plaintiffs also mention the Clark decision, but only in a purely conclusory fashion without any analysis. See Pls.' Opp. at 8. Plaintiffs' insistence that Dr. Atlas's opinion satisfies the standard in Clark is incorrect for the reasons described at length in Defendant's motion and this brief.

recommended by Schnabel Engineering Associates "would have provided insurance against the movement which damaged the Levy's property." Id. at 1253.  The structural engineer identified "the standard of care applicable to contractors engaged in sheeting, shoring and underpinning is 'to take all the steps necessary to prevent any movement that's going to cause damage.'" Id.  Defendant's expert acknowledged two applicable provisions of the D.C. Building Code.  Id.

In Levy, the D.C. Court of Appeals ultimately acknowledged that a standard of care requiring everything that could be done to be done was "not necessarily unrealistic in this particular context."  Levy, 584 A.2d at 1256.  The standard for maintaining a floor is not comparable to the standard for ensuring that excavation work on a construction site does not cause damage to an adjacent building.  The standard for the floor is obviously not "everything that can be done," but rather what is reasonable under the circumstances.  In this case, using tile that is over the ASTM Standard 649 when dry and becomes more slip-resistant when wet is more than reasonable.

Phillips also presents a substantially different factual scenario because it involves a wrongful death and survival action brought by a prisoner who hanged himself in a D.C. jail.  See Phillips, 714 A.2d at 769-70.  In Phillips, plaintiff's expert relied on Standard No. 110 of the American Medical Association ("AMA")'s "Standard for Health Services in Jails," a specific Department of Corrections directive relating to court-ordered forensic admissions, and an American Correctional Association ("ACA") standard.  See id. at 771.  The expert testified that the ACA standard required inmates in the general population to be visually observed at least every thirty minutes and that the prison officials did not comply with this standard.  See id. & at 775.  The Court accepted this portion of the expert's testimony as sufficient to send the case to

the jury. See id. at 774-75. The Court recognized that Clark allows for two types of expert testimony to establish the standard of care: (a) practices in fact generally followed by other comparable governmental facilities; or (b) some nationally recognized standard. See id. at 775, citing Clark, 708 A.2d at 635.

Here, unlike Phillips, Plaintiffs' expert does not use the word "national" to modify the standard of care associated with the placement of mats or cones. Rather, he uses the label "standard practice." See Pls.' Opp. at 8. Even now, Dr. Atlas points to no recognized authority in safety or architecture, and has never specified what "industry" he was relying upon for establishing the supposed-standard. When asked in his deposition what he was referring to in the portion of his written report concerning the placement of mats and cones, Plaintiffs' expert testified on that he thought it was common to place mats in the Northeast, and did not testify that there was a national standard:

> Part of what I was trying to establish in my own mind's eye and from my experience in coming up to D.C., I've come up to D.C. for many years for different conferences I speak at. So I'm familiar with New York, D.C. and Baltimore. I speak regularly at national conferences and conventions around the country.

> In my site visit in October of 2006, it had been raining that particular afternoon when I had gone to Mr. Casper's office for my pre-site visit preparation. And as I walked around the different -- I was staying at a hotel not too far from there, and Mr. Casper's office is not too far from the White House. So we're talking geographic proximity of that area of Washington, D.C. that's give or take a quarter half mile radius of the White House and those office buildings.

> I don't want to say every -- but it would appear that on the route that I went, every single office building that had a lobby foyer, had a mat down and typically had the cones saying, you know, the little yellow cones and picture of someone slipping, you know, and pay attention.

> And it just reaffirmed the fact that it's standard practice in the northeast that when you have wet conditions because especially in the east, office buildings where there's very nice architectural materials on the floor, sometimes marble granite or things of that nature, that it is standard practice to put down mats and do the cones. And so I just wanted to reaffirm the fact that this wasn't a fluke thing, that in fact -- and this is before I had the government's exhibits of policies and procedures, so I was sort of in the dark of what was your standard of care within government practice, whether it be GSA buildings and/or the White House which is part of the GSA family network.

Atlas Dep. at 74-75. Dr. Atlas readily acknowledged that the upscale office buildings he passed had marble or granite floor coverings unlike the tile in the White House press lunch room. Id. at 78.

Importantly, Plaintiffs may not rely on the practice of the White House custodial staff to establish a standard of care. Indeed, the court in Phillips specifically rejected an internal agency directive or protocol as an appropriate standard of care in a tort case. Phillips, 714 A.2d at 774. Even so, the GSA Standards for Buildings and Facilities (Pls.' Exhibit 10) is permissive, not mandatory: mats "may" be placed at **entrance lobbies** in federal buildings, and even this vague GSA Standard is inapplicable here because the entrance to the press lunch area at the White House is not that kind of space. See Deposition of Dorie Taylor (Pls.' Exh. 6) at 50-51 (describing the area at the back of the press lunch room); Frazza Dep. at 46 ("So we walk down the steps and I went to go in the back of the press room because that's the shortest route to my desk."). Plaintiffs' expert specifically acknowledged that employee entrances could have standards different from those of entrances from those he observed on his walk in D.C. See Atlas Dep. at 79.

The portion of Dr. Atlas's opinion quoted on the second page of Plaintiffs' opposition epitomizes the problem. Dr. Atlas cites no nationally recognized standard for a requirement of

placing "cones warning individuals to watch where they are walking." Even if cones had been in place in this case, there is little reason to believe that the incident would have been prevented because Mr. Frazza testified that his first foot over the threshold slipped and caused him to fall, and he testified that he had been in the room over a thousand times and did not recall ever having seen a mat at that entrance. Frazza Dep. at 27 (attached). People coming in from the outside in wet conditions should not need a warning that their feet might be wet, and a finder-of-fact can apply common sense to reach that conclusion. See Gunter v. United States, 10 F.Supp.2d 534 (M.D.N.C. 1998) (applying North Carolina law and granting summary judgment for defendant in FTCA case involving slip-and-fall of a regular customer at a post office on a rainy day where plaintiff stepped off a mat and onto a concrete floor because the hazard posed by wet outdoor conditions is common and obvious); *Restatement (Second) of Torts* § 343A(1) (1965) ("A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."); Poyner v. Loftus, 694 A.2d 69, 72-73 (D.C. 1997) (agreeing with analysis of a contributory negligence issue where there was an open and obvious condition requiring reasonable people to exercise due care).

  Finally, Plaintiffs suggest that resolving defendant's motion somehow implicates credibility. See Pls.' Opp. at 5. It does not. "Whether the evidence, viewed in the light most favorable to [plaintiff], was sufficient to go to the jury is a question of law . . ." Phillips, 714 A.2d at 772. Equally irrelevant is the information gratuitously included in Plaintiffs' opposition concerning Mr. Frazza's injuries and damages because sympathy is not a factor in the analysis of whether Plaintiffs have presented sufficient evidence of a recognized and applicable standard of

care and its breach to withstand Defendant's motion.  See Edwards v. Consolidated Rail Corp., 567 F. Supp. 1087, 1114 (D.D.C. 1983) (granting defendant's summary judgment motion in case where court noted sympathy for a minor child injured when he climbed on top of a train but where there was no breach of a standard of care), aff'd, 733 F.2d 236 (D.C. Cir. 1984) (table), cert. denied, 469 U.S. 883 (1984).  Because that evidence is essential and lacking, Plaintiffs' opposition fails to show any reason why Defendant's motion should be denied.

### Conclusion

Despite labeling defendant's motion as "baseless" (Pls.' Opp. at 2), Plaintiffs have offered the Court well over a hundred pages of material in opposition.  Defendant respectfully suggests that Plaintiffs protest too much.  Because Plaintiffs have no legitimate expert opinion showing that there was any breach of an applicable national standard of care, they are unable to prove two of the required elements of their claims, and Defendant's motion should be granted.

Dated: June 15, 2007.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

 /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


 /s/
JANE M. LYONS, D.C. Bar # 451737
Assistant United States Attorney
555 4th Street, N.W. - Room E4822

                Washington, D.C. 20530
                (202) 514-7161
                (202) 514-8780 (facsimile)